## IN RE JOSEPH C. JONES.

May Term, 1897.

Present: ROSS, C. J., TAFT, TYLER, MUNSON, START and THOMPSON, JJ.

*Disbarment Proceedings—Evidence.*

Custom is not to be proved by evidence of individual instances.

The report of a commission appointed to find facts in disbarment proceedings will not be rejected, revised or ignored where no objection is made to the method of procedure nor to the ability, integrity and fairness of the commissioners.

An attorney is no less liable to disbarment for misconduct because it occurs in his administration of the office of State's Attorney.

The respondent was found guilty of intentionally deceiving the presiding judge in reference to material facts for the purpose of procuring from him a certificate of faithful administration without which he could not draw his salary as State's Attorney. *Held*, that it was immaterial that the misrepresentation was made to the judge in vacation.

DISBARMENT proceedings. Heard on report of commissioners to the Supreme Court for the County of Rutland at the May Term, 1897.

The complaint alleged that at the September Term, 1896, of the county court for Rutland County the Hon. John W. Rowell presided; that there were then pending in said

court a large number of prosecutions in behalf of the State against various respondents named in the complaint for violation of the law against the traffic in intoxicating liquor; that said Jones was then State's Attorney for said county and an attorney of said court; that in each of said cases such proceedings were had that the bail was called and adjudged forfeited and judgments were rendered against the principals and sureties in the various amounts stated in the complaint, ranging in the aggregate against different parties from $1,375.00 to $100.00; that said sureties were financially responsible and the judgments collectible; that said judge thereupon gave said Jones to understand that he regarded it as the duty of said Jones to faithfully sue, prosecute and collect said sums so far as they were collectible; that on the 30th day of November, 1896, which was the last day of said Jones's term of office, he was entitled to receive his salary as State's Attorney for the six months then ending, upon obtaining from said presiding judge a certificate that he had faithfully performed the duties of his office; that it was his duty to honestly inform said judge in regard thereto and to sue for and collect such forfeited sums; that nevertheless said Jones, corruptly intending to deceive said judge and procure him to sign such certificate and to deprive the State of the benefit of said judgments, did on that day bring actions of debt upon said recognizances against certain of the respondents and their sureties in the city court for the city of Rutland, combining in one action counts upon different recognizances, so far as the same could be done without exceeding the jurisdiction of the court, all of which actions were returnable and entered in court on the same day, service thereof being accepted on the part of the defendants, and with the same corrupt intention did procure said court to render judgment in each case that the State recover one cent damages and costs, taxed and allowed at the sum of $4.50; that said judgments were on the same day paid, and that no other sums

have been collected; that against others of the principals and sureties no action has been brought; that on the 1st day of December, 1896, said Jones, with the same corrupt intention to deceive, informed said judge by letter that he had brought suit to recover forfeitures in all said cases and inclosed a certificate to be signed; that being deceived thereby said judge signed the same; wherefore said Jones should be removed from his offices of attorney at law and solicitor in chancery.

The answer admitted the pendency of said prosecutions, that said Jones was State's Attorney and said Rowell presiding judge as alleged, and that the recognizances were declared forfeited as alleged in the complaint for the failure of the surety to produce his principal, but averred that no appearance was made by or in behalf of the sureties, no motion to chancer made and no final judgment entered in any case against the surety; that the State's Attorney, as was his duty to do, applied to the court for a bench warrant for the re-arrest of the respondent in each case, which application was granted and the warrant issued and placed in the hands of the proper officer for service; that it was also the duty of said Jones to prosecute each of said forfeitures to final judgment according to law; that only two methods were known of prosecuting the same, one being by writ of *scire facias* against the bail returnable to the next term of said county court, and the other by action of debt before any court having jurisdiction; that by reason of criticism which had been made for cumbering the docket of the county court with cases that might be prosecuted elsewhere, said Jones considered it his duty to pursue the second method; that he had been State's Attorney for nearly four years and during that time had prosecuted many recognizances, forfeited before the county court, in said city court with results that were satisfactory to the courts, the people and the auditor of accounts, and that he honestly believed that it was for the best interests of the State and

the cause of justice that that method should be pursued; that said September Term adjourned, without day, on the 13th of November, 1896, and that said Jones directed the making of writs upon all said forfeited recognizances, uniting in a single suit all causes of action that could be united, for the purpose of saving expense, and honestly supposed that all of said writs were served or service thereof accepted until the commencement of these proceedings; but that some of said writs were left in his office drawer and overlooked and were never in fact served; that service of the other writs was delayed for the accommodation of the attorney representing the defendants therein, in consideration of which delay, service thereof was accepted; that the only judgment rendered by the county court was that the bail was forfeited, and that the judgment was not collectible against the surety to the amount of said bail until by due process of law the surety had been brought before some court of competent jurisdiction and a judgment had been entered and damages assessed; that when said cases came on for hearing in the city court said Jones took the position that in all cases where the principal had been re-arrested upon the bench warrant, judgment should be rendered for such sum only as would make the State whole for costs and expenses and that wherever the principal had not been re-arrested, judgment should be rendered for the whole amount; that those cases in which the principal had not been re-arrested were continued, upon application of the defendants, to enable the sureties to surrender their principals to be re-arrested upon the bench warrants, and so passed beyond his term of office; that in all the other cases the judgment for one cent damages and costs was rendered by the city court in its best discretion and said Jones is not responsible therefor; that there never was any agreement between said Jones and the defendants in said actions, or any one representing them, as to what judgment should be rendered; that when said Jones wrote said letter to the

presiding judge, he believed it to be strictly true and did not consider the disposition of said cases so unusual that said judge would desire to be informed thereof; that the same was in substantial accord with previous custom; that in fact said judge was not deceived by said letter because in fact said judge sent him the required certificate before receiving the communication from said Jones referred to in the complaint.

The commissioners reported among other things the following: After the other criminal cases at said September Term had been tried, the court asked said Jones if he had any further use for the jury and he replied that he had not, whereupon the jurymen, except one, were discharged. A large number of liquor cases remained. These the State's Attorney said would have to be disposed of by entering a *nolle prosequi* because there was no evidence to sustain them; there were in all one hundred and twenty-five such cases. The court declined to allow a *nolle prosequi* to be entered. Some of the respondents pleaded guilty and were fined and sentenced. In view of these results a new jury was ordered to be summoned for the 10th of November and an adjournment was taken till that time. Before the adjournment the judge, in a talk with the State's Attorney, advised and urged him to be diligent, telling him he could not afford to neglect his duty. The State's Attorney replied that he wished and intended to do so and that he would do all in his power to get the cases ready. In this there is no reason to find that he was not sincere. The court reassembled on the 10th, but no case was ready, and bonds were called and forfeited in the cases, about one hundred and twenty-five in all. This was not the fault of the State's Attorney. Thereupon the judge said to him, "You see how this matter is running. Now I want you to sue and collect these recognizances." The State's Attorney replied, that he was going to do it and was then having forms printed for that very purpose. The State's Attorney understood, or ought to have understood,

that when the judge said "sue and collect these recognizances," he did not mean simply sue and get rid of them. The county court finally adjourned November 13th and soon after that the State's Attorney told F. S. Platt, who was counsel for some of the defendants, that he was about to bring suits to collect the bail. Platt proposed to accept service, and, when Jones objected that he would get no security in that way, promised to pay whatever judgments should be rendered and asked that no suit be brought until after the adjournment of the legislature, of which he was a member. Finally it was arranged that the suits should be brought in a consolidated form, service accepted, and that Platt should be responsible for the payment of the judgments and that the suits should be disposed of November 30th. A similar arrangement was made as to other suits with P. M. Meldon, counsel for the defendants therein. The State's Attorney being absent until the evening of the 30th, his partner, Mr. Rice, appeared for him in the cases before the city court and acted in accordance with the State's Attorney's instructions. Platt informed the court that the respondents had been re-arrested and insisted that judgment should be entered for one cent damages and costs. In answer to an inquiry by the court touching the costs which had been made upon the bench warrants, Platt replied that those costs were a part of the cases in the county court and should not be included here. The State's Attorney, in instructing his partner, had informed him that he should be satisfied with any judgments the court might render in cases in which the respondents had been re-arrested. No opposition was made to the contention of the respondents' counsel, and the city court understood that the State's Attorney, through his representative, consented to the judgments for one cent damages and costs. The judgments were rendered with entire acquiescence of everybody concerned and in conformity with a general expectation. When certain of the cases were called up it was evening and the

State's Attorney had returned. The court inquired what judgments should be entered therein; Mr. Platt said that the same judgments should be entered as in the other cases and the State's Attorney made no objection. Certain of the cases in which the respondents had not been re-arrested were continued.

The manner of making the writs was as follows: About the 20th of November the State's Attorney procured blanks and instructed a clerk how to fill them, and the writs were being made from that time to, and including, the 30th; some of the counsel of the defendants assisted in making the writs; none of the writs were dated; some contained no recognizance for costs; on some service was accepted for only one of the defendants; on others there was no acceptance of service; and on still others service was accepted before the writs had been signed. In some of the writs different defendants were named in different counts.

Upon evidence offered by the respondent herein, and received against the objection of the State, it is found that when cases of this class have come before the county court for Rutland County, that court, if the respondents had been re-arrested, generally chancered the bail to a nominal sum, one dollar, or five dollars, or twenty-five dollars, but that judgment was rendered in each case according to the condition of the circumstances attending it.

On December 1, 1896, Judge Rowell sent the respondent herein a certificate that he had faithfully administered his office during the September Term of the county court. On the same day, before receiving the certificate, the respondent wrote to Judge Rowell, inclosing a certificate to be signed by him, such as the statute required, to the effect that the respondent had faithfully administered his office for the six months just ended. In his letter accompanying this certificate the respondent said, "I have brought suits to recover forfeitures on bail cases and I think I have included every case." Judge Rowell did not sign the enclosed certif-

icate, but soon after received from the State Auditor a letter informing him that his limited certificate was insufficient and that he had declined to pay the respondent unless furnished with a certificate covering the whole period of six months. Judge Rowell then supposing that the cases mentioned in the respondent's letter of December 1st were still pending, sent to the auditor the required certificate and the respondent received his salary. From all the circumstances it is found that the respondent, when he wrote the letter of December 1st, had good reason to believe, and knew, or ought to have known, that the manner in which the various suits had been disposed of was a matter material to be made known to enable the judge to determine the question submitted by the respondent in that letter, and that he intentionally omitted to state frankly and fairly what had been done in those suits. It is further found that Judge Rowell was by that letter deceived and induced to believe that the respondent had stated fully all that had been done, and that he furnished the certificate in consequence thereof.

*W. H. Rowland*, State's Attorney, and *Barber & Darling* for the State.

Whether the proceedings forfeiting bail have the effect of an adjudication so as to charge the surety to the amount of the forfeiture is not material. The question upon this phase of the case is whether the respondent has exercised good fidelity to the court as an officer thereof and to his client, the State, in his conduct respecting said forfeitures.

The attorney's oath, among other things, provides that the affiant, "shall act in the office of attorney within the court according to his best learning and discretion with all good fidelity, as well to the court as to his client." The State contends that the report shows the respondent to have been guilty of a violation of this oath. The State of Vermont was the client of the respondent in the matter of

the collection of the forfeited recognizances. What it desired in respect to the collection of such forfeitures is easily discernible in view of the fact that V. S. § 346 provides, "When bail is forfeited, the state auditor shall at once call the attention of the State's Attorney to the case, who shall immediately commence proceedings to enforce collection, and the bill of costs shall be held until such collection is made or proceedings are commenced."

Again, V. S. § 2955, relating to the duties of State's Attorney, in the last paragraph thereof, provides that he shall, "take measures to collect fines, forfeitures, penalties, costs, or other demands or sums of money due to the State or county." And finally to make certain the expression of the client's will, V. S. 4532 provides that where bail is forfeited as in the case at bar, the State's Attorney, "shall forthwith apply to the court for a bench warrant for the re-arrest of such respondent, whereupon, trial shall be had as speedily as the ends of justice will permit and for each successive forfeiture of recognizance in such cause, a like procedure shall be had until trial thereof, and such State's Attorney shall prosecute every such forfeiture to final judgment."

Clearly, in view of these unequivocal expressions of the will of his client, the State, the respondent had no alternative in the exercise of good fidelity to his client except to prosecute such forfeiture to final judgment.

It is contended that in the proceedings before the city court, the respondent did, in the language of the statute, prosecute these forfeitures to final judgment. To so hold is to say that the legislature contemplated the enactment of a solemn farce under the guise of judicial proceedings. The statute cannot admit such an idle construction. To prosecute to final judgment must mean to prosecute to some purpose, to some use, to some end.

The respondents in these cases, at the time the so-called final judgments of the city court were rendered, had been

re-arrested, so that no purpose could be subserved in prose-
cuting the forfeitures to a judgment for a nominal sum
except to comply with the form and not with the spirit of
the statute. It was the duty of the respondent to prosecute
to some substantial final judgment, to prosecute for some
good to the State, to at least cover into the State treasury
some sum that would in a measure make the State whole
for the expense by it incurred and sustained in the matter of
these prosecutions. To recover final judgment for the sum
of less than one cent for every hundred dollars of forfeiture
can hardly be said to be acting in good fidelity to the State.

It is contended that with the matter of these forfeitures
and the proceedings of the respondent relating thereto before
the city court, this court and the committee by it appointed
have nothing to do; that the respondent is responsible
alone to the people from whom he derived his power and
authority as State's Attorney; that his conduct therein
relates to the performance of his official duties as State's
Attorney and that this court cannot inquire into the same;
that the only way to reach acts of this character is by
proceedings in impeachment before the constitutional
tribunal, or by an appeal to that last final arbiter of all
official actions, the opinion of the people as expressed by
their ballots.

As said by the court in *Re Enright*, 67 Vt. 351, all decis-
ions and authorities concur in holding that it is the right
and duty of the court when an attorney is found guilty of
corrupt or fraudulent acts performed in his office of attorney
to withdraw the right and privilege which were conferred
by admitting him to the bar of the courts of the State.
And it is held that where an attorney has been guilty of
acts toward his client that merit disbarment, it matters not
if the client is satisfied to have him escape such punishment,
yet it is the duty of the court in the exercise of its prerog-
ative to preserve its self-respect and the respect of the public,
to prevent him from acting as an officer and attorney

thereof. *Re Woolley*, 11 Bush. 111; *Re Davies*, 93 Penn. 116: 39 Am. Rep. 729; *Re Attorney*, 86 N. Y. 563. See also *Ex parte*, Wall, 107 U. S. 265, where it is said the court should compel attorneys to act honestly toward their clients.

For a clear statement of the reasons why it is the duty of the court so to proceed and a discussion of what should be required of attorneys, see *Fairfield County Bar* v. *Taylor*, 60 Conn. 11. For full collation of authorities, see *State* v. *Kirke*, 12 Fla. 278: 95 Am. Dec. 314 and note.

Although the people have not proceeded against him for his neglect of duty, that is no reason why the court should fail in that respect. See *Re Cowdery*, 69 Cal. 32: 58 Am. Rep. 545.

*J. W. Stewart* for the respondent.

The State's Attorney gets his commission from the people. His duties are defined, prescribed and enjoined by the statute. To their obedience he is solemnly bound by his official oath. In the exercise of his honest judgment applied to the discharge of his official duty, he is absolutely independent of dictation or interference by any person, official or otherwise, save where such interference is authorized in express terms by statute.

The supreme mandate of the legislature, as he honestly understands and interprets it, is his only guide.

So the Judge stands in the same relation to the law, absolutely independent within his prescribed sphere of action.

Each may err in the exercise either of a wise discretion or a sound judgment, as both often do, and will continue to do, for both are under limitations common to the race; but denial to either of the independent exercise of judgment in the performance of official duty could only serve to impair and destroy their efficiency.

It is claimed for the respondent:

(1) That the duty, power and authority of the State's

Attorney in proceedings for the recovery of forfeiture of bail in criminal cases are prescribed in V. S. 346 and 4532.

(2) That under the provisions of these sections he may, in his discretion, proceed in the performance of such duty in any court having jurisdiction to render final judgment.

(3) That upon motion to chancer in such cases in view of the statute which gives discretion to the court to determine the extent of reduction of damages, and in view of the established practice in this class of cases, the right of the State's Attorney to the independent exercise of his own judgment as to such extent, is absolute, whether in the form of suggestion to the court or of acquiescence in its decision.

(4) The judicial determination of the court, upon motion to chancer, is an official act for which, under the statute, such court is solely responsible.

(5) The principles above enunciated are strictly applicable to the respondent's procedure in the cases under inquiry.

(6) Judge Rowell's injunction to the respondent, delivered as it was from the bench in open court, in form at least, was mandatory, and by whatever terms it may be characterized, whether direction, order, injunction, or advice, it is clear that it could not impair Jones's perfect independence of action in the conduct and final determination of the cases.

The report finds that Judge Rowell did not assume to direct Jones, and this accords with Judge Rowell's testimony.

In this view of the case Jones's letter to Judge Rowell, which was strictly true, could not have been written with any intention to deceive, and the real difficulty seems to have arisen from the difference of understanding in the two as to what Judge Rowell meant by his order. Jones's understanding was based upon what he regarded as his duty in conformity with the statute and the practice before alluded to.

He had no discoverable motive to deceive the judge, and under oath explicitly denied any idea or intention of so doing.

The finding of the committee that when the respondent wrote the letter of December 1st, he had good reason to believe and knew, or ought to have known, that the manner in which the various suits that he had conducted as aforesaid had been finally disposed of were facts material to be made known to the judge to enable him to determine the very question submitted by the respondent in that letter asking for his certificate, and that the respondent intentionally omitted to state frankly and fairly what had been done with the suits which he said had been commenced, is wholly unwarranted upon review of the whole case as presented by the report.

It is clearly implied here that if the judge had known that Jones had so disposed of these cases the certificate would have been withheld.

For, if nothing had been done by Jones to justify refusal of the certificate, then there could have been no deceit and this complaint is groundless.

If, on the other hand, Jones's conduct of these cases to final judgment in the manner stated had been made ground of refusal of the certificate by Judge Rowell, such action must rest upon the proposition that the judge had authority to direct Jones where and how to proceed in the discharge of his official duty in the premises. This proposition is denied and the judge himself concedes its unsoundness.

The general provision of the statute which makes the judge a certifying officer to the fidelity of the State's Attorney does not avoid the conclusion last above stated. It will not do to disclaim power to direct and then to impose terms of procedure, non-compliance with which is punished by withholding certificate.

The statute which makes the judge the official assurer of the fidelity of the State's Attorney is an anomaly in our system, whose crowning glory has been a division of governmental functions into departments, each of whose

duties and powers are sharply defined by constitutional and statutory provision.

Upon the facts reported the inference of the committee that Jones was guilty of infidelity to his client is not only unwarranted, but is clearly refuted. His action was in strict pursuance of the statute and the practice established thereunder. His alleged acquiescence in the judgment of the court in chancering the bonds affords no grounds for the charge of such infidelity. If it be said that such acquiescence was an error of judgment it would not justify such charge or inference, for by virtue of his office his personal judgment, not that of the committee, nor of Judge Rowell, nor of anybody else, was, upon every principle of sound policy, the sole criterion of his action. Nothing short of a corrupt purpose can justify the charge, and there is no evidence or pretense of the existence of corrupt purpose.

If Jones's letter operated in fact to deceive Judge Rowell, though without intention on the part of Jones, it was simply because the Judge had entertained some private, personal and unexpressed conception of what in *his* judgment Jones should have done, or what he himself in Jones's place in the exercise of his discretion as prosecutor would have done.

THOMPSON, J. At the hearing before this court, neither the respondent nor his counsel made mention of the exception taken by him to the ruling of the commissioners, excluding evidence offered by him to show the action of the county court in certain individual cases in regard to chancering bail where the respondent had been re-arrested. Hence we take no notice of the exception, further than to remark, that the commissioners did not err in holding that this evidence offered was not competent to prove a custom in that behalf in the county court.

The respondent in his statement before this court, and his counsel in his brief, have made an elaborate effort in support

of their contention that the commissioners erred in finding the facts and conclusions reported by them, from the evidence submitted to them. The commissioners are lawyers of ability and wide and varied experience, and are men of irreproachable character and standing in the bar and among the citizens of this State. They were selected by the court, with the concurrence and approval of the respondent and his counsel, to hear the evidence, find and report the facts and their conclusions thereon in respect to the charges made against the respondent as an attorney of this court. We are aware that in some jurisdictions, when charges are preferred against an attorney involving his official conduct and character, the court hears the evidence, finds the facts and conclusions deducible therefrom, and renders judgment thereon. But we think it is fairer to an attorney charged with misconduct affecting him in his office of attorney, to have the case heard and the facts and conclusions found, by eminent members of the bar and reported to the court sitting to render judgment thereon. This insures him a trial by his peers. It also removes the opportunity to charge the court with having misconstrued the evidence, or with having become biased in hearing the evidence and the arguments in respect to the facts and conclusions to be drawn therefrom. Neither the respondent nor his counsel take any exception, nor make any objection, to the method of procedure, nor to the ability, integrity and fairness of the commissioners who heard the case. The commissioners say in their report that all parties interested were fully heard. It is not contended that this is untrue, nor is it claimed that either of the commissioners was in any way biased or prejudiced against the respondent, nor that any fact or conclusion found was without the support of legitimate evidence. Under these circumstances, for the court to revise, ignore or reject, any relevant fact found and reported by the commissioners, would be as capricious as it would be for it to revise, ignore or reject, the verdict of a jury, found from

legitimate evidence, without exception thereto, or any suggestion that any other evidence existed, bearing upon the issues tried. Such a course would subvert the administration of justice by the courts, and bring them into well merited contempt. It is apparent that in this case the judgment of this court must be rendered upon the facts and conclusions legitimately found and reported by the commissioners.

The respondent and his counsel claimed before the commissioners, and now contend, that because the misconduct found relates to the respondent's duties as State's Attorney for the county of Rutland, for which he is answerable to the voters of the county, and to the State, and for which he might be impeached, this court has no jurisdiction over him in regard to the same. While acting in the county court in the prosecution of cases in which the State was a party, and in all his relations to parties, counsel and court, in such prosecutions, he was also acting in his official capacity as an attorney of this court, and under the obligations assumed by him when he became such attorney. Notwithstanding he might be liable to impeachment or might be rejected by the voters, if a candidate for re-election, his conduct when acting in his office of attorney, and sometimes when acting in a private or other capacity, was open to investigation by this court, and if found to be such that the court, to protect itself and the public, and to keep the administration of justice pure, ought to withdraw the protection and credit under the law which it accorded him by admitting him to the office of an attorney at law and solicitor in chancery, it is, beyond question, the right and duty of this court to deal with him as justice demands. It may suspend or disbar him. All courts, so far as we are aware, which are empowered to admit attorneys to practice, have, at all times, the right to inquire into the official conduct of those so admitted, and into their conduct generally, and if found to be such as shows them to be

unworthy and unfit to practice their profession, have the right, and may be under the duty, of withdrawing the right accorded. Nor is this right suspended, if the acts complained of are such as render the attorney liable to criminal prosecution and punishment. It is not necessary to cite authorities in support of these propositions. They will be found stated in the elementary books and are sustained by the adjudged cases. See *Ex parte Wall* 107 U. S. 265: 27 L. C. P. Co. 552; *Ex parte Bradley*, 7 Wall. (U. S.) 364: 19 L. C. P. Co. 214 and note; *Dickens's Case*, 67 Penn. St. 169: 5 Am. Rep. 420; *In re Cowdery*, 69 Cal. 32: 58 Am. Rep. 545; *State* v. *Kirke*, 12 Fla. 278: 95 Am. Dec. 314 and note; *Burns* v. *Allen*, 15 R. I. 32: 2 Am. St. Rep. 844 and note. From these and many other authorities which might be cited, it is manifest that the object of admission to the bar is to bring to the administration of justice a class of high-minded men of such education and training, and such mental and moral qualifications, as can and will aid in determining the rights and duties of all litigants, under all circumstances, according to law, so that the administration of the law may be pure, clean and enlightened, and thereby every one obtain his exact rights and privileges. When one so admitted, by his conduct as an attorney, or as an individual, shows himself unworthy of his high calling and disgraces the office, it is the duty of the court, empowered to admit, to withdraw the rights and privileges conferred by the admission. It does this, not primarily as a punishment to him, but to protect the administration of justice.

The charges against the respondent, found established by the commissioners, are of a very serious character. They are infidelity to the interest of his client, the State, and intentionally withholding facts which he knew were material, from the judge, when applying for a certificate required by statute, to entitle him to draw his salary, whereby the judge was deceived. Fidelity to his client's interests, and honesty and frankness in dealing with the judge in regard to

discharging a duty towards him and the State, required by law, are prime qualifications of every attorney, made so by his oath of office.    It is not contended, that if these charges are to stand proven, and are such that the respondent is answerable for them as an attorney, to this court, they do not demand suspension or disbarment.    It matters not that his deception of the judge occurred when he was not acting as a member of the county court, nor in the trial of a cause. It occurred when he was discharging a duty imposed by law.    The charges touch the fidelity and integrity of the respondent and show him to be unworthy to minister at the altar of justice, and that, under the law, it is the duty of this court to withdraw from him the right which it granted by admitting him to the bar of this State.    It is never other than a sad and painful duty for a court to be obliged to render such a judgment against one of its once accredited officers.

> *Judgment that said Joseph C. Jones is removed from the office of attorney at law and from the office of solicitor in chancery.*

START, J., dissenting.    If the respondent's motion to recommit the report to the commissioners for further findings was rightfully denied, then, in my opinion, the judgment is right; but I do not concur in the action of a majority of the court in denying this motion and entering final judgment, without further hearing before the commissioners.

On the hearing before this court upon the commissioners' report, the respondent was allowed, in his defence, to make an oral statement, in which he claimed that, during his term of office, he had been accustomed to bring suits on such forfeited recognizances, returnable before the city court; that said court, in cases where the respondents had been re-arrested or surrendered by their sureties, invariably rendered judgment for a nominal sum in damages, or a sum

that would make good any expense incurred by the State by reason of the non-appearance of the respondent; that he understood and believed, at the time he brought the suits in question before the city court, and at the time judgments were entered therein, that it had been the uniform practice of his predecessors in office to bring suits in like manner before the city court, and that like judgments had been rendered therein; that his action, and the action of the city court and of his predecessors in office, had never before been questioned or criticised by the auditor of accounts or by any court; that at the time of the bringing of said suits and rendering of said judgments, he, in good faith, honestly believed that, when the surety returned his principal into custody and paid such expense as had been incurred by reason of the non-appearance of the principal, he had fully performed the obligation assumed by his recognizance; that, in all he did, he, in good faith, believed he was pursuing, and that the city court was carrying out, a practice that was well known to the auditor of accounts and other officials of the State; that it had been the practice of the Rutland County Court, when a respondent was returned into custody, to chancer the recognizance to a nominal sum, or a sum equal to any expense incurred by reason of the failure of the surety to have his principal in court when called upon to do so; that it never occurred to him that the judge did not know and understand said practice, or that the judge expected any other course would be pursued; that he supposed, when the judge told him that he regarded it as his duty to sue and collect forfeitures, the judge had reference to cases in which respondents were not returned into custody, and not to cases where the respondents had been thus returned; that, when he wrote that letter to the judge, he had in mind this class of cases, and, when he said in his letter he had brought suits, he referred to this class of cases; that, at the time he wrote the letter, all the cases where respondents had not been arrested or returned into custody were then

pending and had not been disposed of in the city court; that, by reason of the uniform practice, which he supposed was well understood by the presiding judge, to render judgment, for a nominal sum where respondents had been returned into custody, it did not occur to him that it was material to mention these cases as having been disposed of; and that he had no intention to deceive the judge, but supposed he had disposed of the cases in the way and manner that the presiding judge expected they would be disposed of. And he insists, that, inasmuch, as he exacted from the several sureties all that he, in good faith, believed to be justly due, and in so doing had followed a practice that had been approved of, and acquiesced in, by the auditor of accounts, and that had been observed by his predecessors in office and by the Rutland County Court, it ought not to be adjudged that he had not acted in good faith to his client and to the court; and that, if the judge was deceived, it was because the judge did not know or understand what the practice had been in such cases, and not by reason of any intentional wrong on his part.

If the facts claimed in this statement were established, they would be material and ought to be considered in determining whether the respondent acted with fidelity to his client, the State, and to the court. They tend to show that the respondent, in good faith, believed, that, when the sureties in the several causes returned their principals into custody and paid the expense incurred by the State by reason of their failure to have their principals in court at the time they were first called upon to do so, they had done their full duty; that nothing further ought, in justice, to be required of them; and that the Rutland County Court, the Rutland City Court and the auditor of accounts had given such a construction to the statute.

The statute makes it the duty of the court, on hearing a motion to chancer bonds in a criminal cause, to consider in favor of the surety the fact that he has delivered his principal

in court. V. S. 2037. And in actions brought to recover the penalty or forfeiture annexed to a bond of recognizance taken in a criminal cause, the court may reduce the penalty of such bond and render judgment therein as circumstances require. V. S. 2038.

If the respondent made out writs for the recovery of the sums forfeited in the several causes, supposing that he had included all such forfeitures, and, before the writs were served or judgments were rendered, the principals were returned into custody, and the respondent could not have recovered the expense he had incurred in making the writs except by proceeding to judgment in the several suits, and he did proceed for this purpose, believing, that, by the construction given to the statute by the courts in Rutland County and the auditor of accounts, only nominal damages were required, and accepted without objection judgments for such damages, believing that the sureties had so far performed and kept the conditions of the recognizances they had entered into that nothing further ought to be required, and that such judgments were in conformity to the usual practice, and the only practice known to him, it is difficult to see wherein he has acted corruptly, or intentionally omitted to discharge his official duty, by not insisting upon judgments for greater sums. The practice and the construction of the statute may have been wrong, and there may have been reasons in these particular cases for a departure from the usual practice and for insisting upon a stricter construction of the statute; but, if it did not occur to the respondent that these cases were exceptional, and that the practice ought not to control, and the necessity for a departure from such usual practice and a stricter construction of the statute was in no way brought to his attention, and he, in good faith, followed such practice and construction, believing it to be just and right, it ought not to be held that he did not act with fidelity to his client, because he did not disregard such practice and construction and adopt some other.

If the facts are as now claimed by the respondent in his oral statement, they should also be weighed and considered in determining whether he intended to deceive the presiding judge of the county court when he wrote the letter of December 1st. If the statute had received the construction given to it by him, and the practice had uniformly been in conformity to such construction, and this was known to him and not to the judge, and this construction and practice had not, to the knowledge of the respondent, been questioned, then he may not have understood the judge as the judge intended he should understand him when he said, "I want you to sue and collect these recognizances."

The respondent having in mind the construction that had been given to the statute, and the practice, and not knowing that the judge did not know of such practice, or that such construction had been given to the statute, may have understood as he claims that the judge referred to cases in which the respondents had not been returned into custody, and had this class of cases in mind when he wrote the letter; and he may have intended to refer to this class of cases when he wrote that he had commenced suits. It appears from the report of the commissioners that suits had been commenced in this class of cases and were still pending. If the respondent, when he wrote to the judge, had this class of cases in mind, and had understood the judge as he now claims, he may well claim that he believed what he wrote was the whole truth, and that he did not intentionally conceal any facts respecting the causes he was writing about, that were material for the judge to know in passing upon the question of whether he was entitled to a certificate. What he stated in his letter was in fact true. Suits had been commenced, and that was all that had been done in those cases that he claims he had in mind. If he did so understand, there was no occasion for saying more; and, if the judge had known of the construction given to the statute, and the practice, he probably would not have been

deceived or misled by the letter. The judge, not knowing the practice that had prevailed in Rutland County, nor the construction there given to the statute, was doubtless misled and deceived by the respondent's letter. But for the purposes of this case, this fact is immaterial, provided the respondent acted in good faith and did not intentionally mislead or deceive the judge. The inquiry should be limited to whether the respondent, in the conduct of the suits in question, acted with fidelity to his client, the State, and whether he intentionally deceived the presiding judge.

The court having permitted the respondent (who is still an officer of the court) to make a statement of claimed facts, which do not appear of record, it ought, in my judgment, to assume, in so far as those facts do not conflict with the findings already made by the commissioners, that those claims are made in good faith, and, that, on re-hearing before the commissioners, he will be able to produce evidence tending to establish such facts. The importance of such evidence to a right determination of the case is apparent.

If the respondent made a mistake in placing his case upon the grounds he did before the commissioners, and in omitting to present to them facts that he has, by his statement, presented to the court, it ought not to be held that it is too late for him to rectify such a mistake. Believing that the respondent, in his oral statement before the court, has submitted a view of his case not fully presented or considered at the hearing before the commissioners, I would recommit the report and give him an opportunity to thus present it to them.

The commissioners find that, "assuming that the respondent actively contributed nothing to bring about the results in these cases, yet his passive indifference to, and acquiescence in, those proceedings constitute an infidelity to his client's interests, equal to that which an active contribution would have been." This, as I understand the report, is the infidelity of the respondent to his client found by the

commissioners. If the judgments in the several causes were in accordance with the construction given to the statute by the courts, the usual practice of the courts, the only practice known to the respondent, and were in fact right, then indifference and acquiescence on the part of the respondent in obtaining them did not constitute infidelity to his client; and it was material for him to show that the judgments were right, or in accordance with the construction the courts had given to the statute, and that he acted in good faith, believing them to be right; and he offered to show individual cases, similar to those in question, in which the Rutland County Court rendered judgments for nominal damages. The commissioners ruled, "that it was not competent to show a custom in that manner, even if the fact of there being a custom was material." To this ruling the respondent excepted. I regard this in the nature of an offer to show what construction the court had given to the statute in cases similar to those in question; and if the respondent had knowledge that the statute had received the construction claimed; and the action of the court in this respect led him to an honest belief that he ought not to insist upon judgments for more than nominal sums, such construction was material and ought to have been considered by the commissioners in determining whether the respondent acted in good faith.

In this connection, a former judge of the court testified, and the commissioners found, that, in this class of cases, when respondents were re-arrested, the court generally chancered the bail to a nominal sum, one dollar, five dollars or twenty-five dollars, and that judgment was rendered in each case according to the conditions and circumstances attending it. While the testimony thus received was material, I do not think it rendered the testimony that was offered and excluded immaterial. The respondent may not have known that judgment was rendered in each case

according to the conditions and circumstances attending it, and may have been influenced in the disposition of the cases by the construction the statute had received in individual cases that were similar to those in question. It does not appear from the report that the respondent offered to show that he knew of the construction the statute had received, nor that he was influenced by such construction; and, by the rules that govern in actions at law, he cannot, as a matter of right, insist upon a re-committal of the report. But in investigations where *good faith* is the vital, if not the only, issue, these rules ought not to be held controlling.

The object and purpose of this proceeding being to determine whether the respondent has so conducted himself in his office of attorney of this court as to merit suspension or disbarment, the court ought, in my judgment, of its own motion, to order further hearing and further facts to be brought upon the record, whenever it considers such hearing and facts material for a right determination of the question of the fitness of a respondent to remain an officer of the court. In my judgment, the court ought not, and its commissioners should not be required, to follow strictly the common law rules of procedure, when a proper regard for the rights of the respondent suggest that some other course ought to be pursued.

From the rulings of the commissioners, and their entire report, I think it doubtful whether they considered the construction of the statute that had been given by the court material, and whether, in making their findings, they took into consideration the practice of the court that may have influenced the respondent in the disposition of the cases, and in writing to the judge as he did. I would not leave a matter so vital in doubt. I would order a further hearing and direct the commissioners to receive the evidence that was offered and excluded, and to hear evidence and report respecting all the matters herein suggested, and particularly to hear evidence and report respecting any

general or particular practice, in cases where principals are returned into custody, that had come to the respondent's knowledge, and respecting the construction that had generally, and in particular cases, been given to the statute relating to forfeited bail in criminal cases, and to consider all facts that they may find respecting such construction of the statute and practice, and the respondent's knowledge thereof, that in any way influenced him in the disposition of the suits in question, or in writing as he did to the judge, in passing upon the question of whether the respondent acted with fidelity to his client, and whether he intentionally deceived or misled the presiding judge.

THOMPSON, J.  I would recommit the commissioners' report for further findings, not as a matter of legal right, but as a matter of discretion in view of the importance of this proceeding as affecting the respondent's future professional life.   The court having denied his motion to recommit, leaving the case standing on the commissioners' report, I concur in the opinion delivered by me for the majority of the court.